GREENE & GREENE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10132.  Promulgated April 17, 1928.

*John E. McClure, Esq.*, for the petitioner.
*J. G. Gibbs, Esq.*, for the respondent.

OPINION.

MURDOCK: The petitioner·has made no mention in its argument or brief as to the Commissioner's deduction from invested capital of the amounts due during 1921 for income and profits tax of the year 1920, prorated as of the dates due, and even if this allegation of error were not abandoned by the petitioner our decision on this point would be for the Commissioner, since his action was in accordance with section 1207 of the Revenue Act of 1926. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; *Amalgamated Sugar Co.*, 4 B. T. A. 568. Therefore the petitioner's invested capital for 1921 must be reduced by the amount of $1,407.93, provided that the amount of its income

and profits tax for 1920, as determined by the Commissioner, was not incorrect.

The petitioner has claimed a deduction for each of the taxable years in the amount of $6,500, on the ground that it was a salary paid by a corporation to its president in pursuance of a contract between the two. In his deficiency notice the Commissioner has stated that these yearly payments were to be made solely to secure the benefit of Greene's individual good will and influence and, consequently, were not proper deductions from gross income. In his answer to the petition the Commissioner contends that these amounts did not constitute salary payments but were, in fact, additional payments on the purchase of Greene's insurance business.

The provisions of the Revenue Acts of 1918 and 1921 in regard to deductions for salaries are identical and read as follows:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, * * *

The transfer agreement between the petitioner and Alfred Greene states that the yearly payment of $6,500 was in further consideration of the sale and transfer of the latter's business and if this were all that the agreement contained in regard thereto, there would be no doubt that these payments constituted an additional consideration for the purchase of the business. The petitioner, however, in order to show that this was in reality a salary, points out particularly the following facts: The agreement contains a further provision, stating that "the said sum of Sixty-five Hundred Dollars ($6,500.00) per year is a payment to Alfred Greene for his good will and his counsel at such times as he is able to render same but that the extent and the amount of the work or service that he may hereafter do or perform in connection with the Greene & Greene business shall be wholly as his own preference and discretion may determine"; Alfred Greene thereafter as president of the petitioner spent part of his time in its offices attending to some correspondence of the company and looking after certain insurance which he had on the books and he turned in some few applications which he presumably solicited after the sale of his business; and the preferred stock certificates issued by the petitioner to Greene contained a statement that the term "operating expenses" as used therein, should include the salaries of three persons, among them Alfred Greene, according to the corporation's contract with each of them.

The petitioner asks us to draw from the above facts the conclusion that $6,500 a year was intended by the parties to be a salary to

Alfred Greene, in consideration of his services, and that this intention was carried out by the subsequent acts of the parties.

This agreement was not one made between a corporation and its president for salaries to be paid to the latter but was a bill of sale by which the owner of a business contracted to transfer it to another. A witness testified as to the discussions occurring before the final agreement was executed. He did not give the conversation of the parties but gave his interpretation thereof which was to the effect that several agreements had been drafted before the final one was executed; that in the first of these the total consideration had been $80,000 and that Greene had objected thereto; that he had insisted that as a preferred stockholder in the company he wanted to have something to do with its management and that it was thought he would personally be able to serve his friends if he were financially interested in the company. However, even assuming that Greene wished to have something to do with the management of the corporation because he was a preferred stockholder and it was considered he would personally be able to serve his friends if he were interested in the company, this alone does not show that the yearly payments set forth in the agreement were to be made to him in consideration of his services as president. It is clear from the agreement that such yearly payments would have to be made to him, even if he performed no service whatsoever, and that if he died one day after the agreement went into effect the payments were to be made to his estate for three years in spite of the fact that no services of any nature were being performed. This condition actually existed for approximately one-half of the second taxable year.

It is a significant fact that nowhere in the agreement is the amount of yearly payments referred to as a salary, and that the agreement also recites the fact that such payments were to be in further consideration of the sale and transfer of the business. Because the agreement also stated that this was a payment for Greene's good will and counsel at such times as he might be able to render the same, it does not follow that the services he performed as president of the petitioner in attending to its correspondence and soliciting some insurance were rendered in consideration of the payments in question. The fact that he was paid nothing in addition to the $6,500 is not controlling, since from the testimony it would seem that the right to participate in the management of the corporation was a benefit conferred by the corporation upon Greene, who had a substantial interest in the corporation through his stock holdings.

We have considered carefully the testimony adduced by the petitioner to show the intention of the parties and the acts of the parties subsequent to the agreement, because we are of the opinion that the

paragraph of the agreement which we have in question is somewhat ambiguous in regard to the exact nature of the payments set forth therein. But we think that where the agreement recites that such payments were to be made in further consideration of the sale and transfer of Greene's business to the corporation it was incumbent upon the petitioner to clearly demonstrate that this was not the intention of the parties, especially when it is apparent that the petitioner was obligated to make these payments even if no services whatsoever were rendered. We think that, considering the circumstances of this case, the petitioner has not adduced sufficient evidence to show that these were payments for services as distinguished from additional payments upon the purchase of the business, and our judgment is therefore for the respondent. .

*Judgment will be entered for the respondent.*

